## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

BENJAMIN AUGUSTIN ALONSO
c/o 519 H Street NW
Washington, DC 20001

TITO SALAZAR
c/o 519 H Street NW
Washington, DC 20001

TAMUNOTONYE BROWN
c/o 519 H Street NW
Washington, DC 20001

        Plaintiffs,

v.

NIGEL PARKINSON
3039 44th Street NW
Washington, DC 20016

PARKINSON CONSTRUCTION
COMPANY, INC.
7826 Eastern Avenue NW, Suite 502
Washington, DC 20012

GOVERNOR'S HOTEL INC.
500 Grant Street, 50th Floor
Pittsburgh, PA 15219

GOVERNOR'S HOTEL COMPANY
500 Grant Street, 50th Floor
Pittsburgh, PA 15219

        Defendants.

**<u>COMPLAINT</u>**

Civil Action No. _____

## COMPLAINT

### Introduction

1.      Defendants employed Plaintiffs as general construction laborers. Defendants did not pay Plaintiffs overtime wages for thousands of Plaintiffs' overtime hours.

2.      Plaintiffs bring this action to recover damages for Defendants' willful failure to pay overtime wages, in violation of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law ("WHL"), Md. Code, Lab. & Empl. Art., § 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law ("WPCL"), Md. Code, Lab. & Empl. Art., § 3-501 *et seq.*

### Jurisdiction and Venue

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because all or some of Defendants have their principal place of business or personal residence in this district.

### Parties

5.      Benjamin Augustin Alonso is an adult resident of Virginia.

6.      Tito Salazar is an adult resident of Maryland.

7.      Tamunotonye Brown is an adult resident of Pennsylvania.

8.      Defendant Nigel Parkinson ("Mr. Parkinson") is an adult resident of the District of Columbia. Mr. Parkinson resides at 3039 44th Street NW, Washington, DC 20016. Mr. Parkinson is the chief executive of all of the corporate Defendants.

9.      Defendant Parkinson Construction Company, Inc. ("PCC") is a Maryland corporation with a principal place of business at 7826 Eastern Avenue NW, Suite 502, Washington, DC 20012. PCC's resident agent for service of process is Mr. Parkinson, 7826 Eastern Avenue NW, Suite 502, Washington, DC 20012. PCC was founded by Mr. Parkinson. PCC is owned and operated by Mr. Parkinson.

10.     Defendant Governor's Hotel Inc. ("GHI")  is a Pennsylvania corporation with a registered office at 500 Grant Street, 50th Floor, Pittsburgh, PA 15219. GHI is owned and operated by Mr. Parkinson. Mr. Parkinson is the president, treasurer and secretary of GHI.

11.     Defendant Governor's Hotel Company ("GHC") is a Pennsylvania limited partnership with a registered office at 500 Grant Street, 50th Floor, Pittsburgh, PA 15219. The general partner in GHC is GHI. As the exclusive owner of GHI, Mr. Parkinson controls GHC.

## Factual Allegations

### Facts Concerning Defendants' Integrated Enterprise

12.     In approximately 2006, Mr. Parkinson started planning the renovation of a hotel formerly known as "Governor's Hotel." Since then, he has rebranded the hotel as "Hotel Indigo."

13.     For purposes of constructing "Hotel Indigo," Mr. Parkinson utilized the corporate Defendants so that all three operated as one integrated enterprise.

14.     On January 12, 2006, Mr. Parkinson created both GHC and GHI for the specific purpose of building, through PCC, what would become known as "Hotel Indigo."

15.     Mr. Parkinson exercises exclusive control over the corporate Defendants, including their operations, pay practices, and the hours worked by its employees.

3

16.     Under the authority of Mr. Parkinson, the three corporate Defendants utilize each other's offices and property.

17.     Mr. Parkinson frequently visited, supervised, inspected and reviewed Hotel Indigo's construction.

18.     At all relevant times, Mr. Parkinson had authority to hire, fire, and control the three corporate Defendants' employees.

19.     For example: in May 2015, Nigel Parkinson personally fired Plaintiffs' coworkers, Juan Martinez and Jose Granados, because they had sued him and his companies for unpaid overtime wages.

20.     As an additional example: in September 2015, Nigel Parkinson personally instructed one of PCC's managers to fire another of Plaintiffs' coworkers, Dimas Gonzalez, because Mr. Gonzalez had joined a lawsuit against Mr. Parkinson and his companies for unpaid overtime wages.

21.     At all relevant times, Mr. Parkinson personally set the pay practices of the corporate Defendants. Mr. Parkinson personally ordered and oversaw a system whereby workers on the Hotel Indigo project were paid their regular rate for overtime hours.

**Facts Concerning Plaintiffs' Employment and Defendants' Pay Practices**

22.     Defendants employed Plaintiffs to perform general construction labor for Defendants.

23.     Plaintiffs' job duties were virtually identical: carpentry, drywall installation, masonry and concrete work, and general construction labor.

24.     Defendants paid Plaintiffs by the hour.

25.     Defendants paid Plaintiffs with a weekly check.

4

26.     Defendants typically paid Plaintiff Benjamin Alonso and Tamunotonye Brown their

regular hourly rate for each hour worked, irrespective of whether or not Plaintiffs worked

overtime.

27.     Defendants typically paid Plaintiff Tito Salazar an overtime rate of $26.00, eight dollars

*lower* than Plaintiff Salazar's regular hourly rate of $34.00.

28.     Defendants often documented their pay practices on a single weekly paystub. For

example, see the paystub below for the week of November 2, 2013 through November 9, 2013.

On this paystub, Plaintiff Tamunotonye Brown was paid $12.00 for each of the 54 hours he

worked.

**PARKINSON CONSTRUCTION CO., INC.**                                                                 31389

| PAY PERIOD 11/09/2013 | CHECK DATE 11/15/2013 | CHECK AMOUNT | *****496.28 | |
|---|---|---|---|---|

| | HOURS | | AMOUNT | DEDUCTIONS/BENEFITS | | AMOUNT | YTD TOTAL |
|---|---|---|---|---|---|---|---|
| Regular | 54.00 | 12.000 | 648.00 | | | | |

| | TAXABLE GROSS | | 648.00 | | | | |
|---|---|---|---|---|---|---|---|
| **TAXES** | **AMOUNT** | **YEAR-TO-DATE** | | | | | |
| FEDERAL | 82.27 | 485.36 | | | | | |
| SOC SEC | 40.17 | 249.98 | | | | | |
| MEDICARE | 9.39 | 58.46 | | | | | |
| Pennsylvania | 19.89 | 39.05 | | TOTAL BENEFITS | 0.00 | TOTAL DEDUCTIONS | 0.00 |
| | | | | TAMUNOTONYE F BROWN | | YTD Gross | 4,032.00 |
| TOTAL TAXES | 151.72 | | | | | | |

29.     More recently, starting in approximately early 2014, Defendants changed their pay practices

to make their failure to pay overtime less obvious. Defendants began to issue Plaintiffs two weekly

paystubs: a) one for hours worked up to 40, and b) one for overtime hours. The second check did not

acknowledge the number of overtime hours. Rather, the amount paid in the second check equaled the

number of overtime hours multiplied by the Plaintiffs' regular hourly rate.

30.    For example, during the workweek of November 30, 2014 through December 6, 2014,

Defendants issued two paychecks to Plaintiff Benjamin Agustin Alonso. In this workweek, Mr.

Alonso worked 71 hours for Defendants. The first paystub was for the 40 regular hours, each paid at

the rate of $20.00 per hour. The second paycheck was for the 31 overtime hours, each paid at the

regular hourly rate of $20.00 per hour.

**PARKINSON CONSTRUCTION CO., INC.**                                                6467

| PAY PERIOD 12/06/2014 | CHECK DATE 12/12/2014 | CHECK AMOUNT | *****644.90 | |
|---|---|---|---|---|

| | HOURS | AMOUNT | DEDUCTIONS/BENEFITS | AMOUNT | YTD TOTAL |
|---|---|---|---|---|---|
| Regular | 40.00  20.000 | 800.00 | | | |

| TAXABLE GROSS | | 800.00 |
|---|---|---|

| TAXES | AMOUNT | YEAR-TO-DATE |
|---|---|---|
| FEDERAL | 33.37 | 716.43 |
| SOC SEC | 49.60 | 1,240.62 |
| MEDICARE | 11.59 | 290.14 |
| 3.20% - Mar F | 60.54 | 993.71 |

| | | | TOTAL BENEFITS | 0.00 | TOTAL DEDUCTIONS | 0.00 |
|---|---|---|---|---|---|---|
| TOTAL TAXES | 155.10 | | BENJAMIN AGUSTIN- ALONSO | | YTD Gross | 20,010.00 |

**PARKINSON CONSTRUCTION CO., INC.**                                                6556

| PAY PERIOD 12/06/2014 | CHECK DATE 12/12/2014 | CHECK AMOUNT | *****510.96 | |
|---|---|---|---|---|

| | HOURS | AMOUNT | DEDUCTIONS/BENEFITS | AMOUNT | YTD TOTAL |
|---|---|---|---|---|---|
| Regular | 0.00  0.000 | 620.00 | | | |

| TAXABLE GROSS | | 620.00 |
|---|---|---|

| TAXES | AMOUNT | YEAR-TO-DATE |
|---|---|---|
| FEDERAL | 15.37 | 731.80 |
| SOC SEC | 38.44 | 1,279.06 |
| MEDICARE | 9.00 | 299.14 |
| 3.20% - Mar F | 46.23 | 1,039.94 |

| | | | TOTAL BENEFITS | 0.00 | TOTAL DEDUCTIONS | 0.00 |
|---|---|---|---|---|---|---|
| TOTAL TAXES | 109.04 | | BENJAMIN AGUSTIN-ALONSO | | YTD Gross | 20,630.00 |

31.    At all relevant times, Defendants designated Plaintiffs as Maryland employees.

32.    Plaintiffs were interviewed and hired for their positions at Defendants' Maryland office,

located at: 3905 Perry Street, Brentwood, MD 20722.

33.    Often, Plaintiffs picked up their paychecks at Defendants' Maryland office.

34.     Regardless of the location of a specific work site, Plaintiffs frequently picked up tools and equipment from Defendants' Maryland office.

35.     Regardless of the location of a specific work site, Plaintiffs contacted Defendants' Maryland office for any inquiries concerning company policy or benefits.

36.     At all relevant times, Defendants corporate policies were coordinated from PCC's DC headquarters as well as the corporate Defendants' Maryland office.

37.     On information and belief, all records relevant to this case are kept at PCC's DC headquarters.

38.     At all relevant times, Defendants had more than two employees, and the annual gross volume of Defendants' business exceeded $500,000.00.

39.     At all relevant times, Defendants had the power to hire and fire Plaintiffs, to control Plaintiffs' work schedule, and to set Plaintiffs' rate of pay.

40.     At all relevant times, Defendants did not maintain true and accurate records of each hour, day, and week worked by Plaintiffs, as required by 29 C.F.R. § 516 and Md. Code, Lab & Empl. Art., § 3-424. Accordingly, the exact amount of hours worked by and wages owed to Plaintiffs will only be known through discovery.

41.     At all relevant times, Defendants were aware that they were legally required to pay Plaintiffs one and one-half times their regular rate for all hours worked in excess of 40 hours in any one workweek.

**Facts Specific to Benjamin Augustine Alonso**

42.     Defendants employed Plaintiff Benjamin Augustine Alonso from before July 2013 (the limitations period) until approximately March 31, 2016.

7

43.     Until approximately December 28, 2013, Mr. Alonso was paid an hourly rate of $12.00.

44.     Between approximately December 29, 2013 and approximately March 31, 2016, Plaintiff Mr. Alonso was paid an hourly rate of $20.00.

45.     In the three years preceding the filing of this Complaint, Mr. Alonso worked approximately 600 hours of overtime for Defendants for which he was paid his regular hourly rate.

46.     For the three years preceding the filing of this Complaint, Defendants owe Mr. Alonso approximately $10,540.00 in unpaid overtime wages.

**Facts Specific to Tito Salazar**

47.     Defendants employed Plaintiff Tito Salazar from before July 2013 (the limitations period) until approximately January 31, 2016.

48.     At all relevant times, Mr. Salazar was paid a regular hourly rate of $34.00.

49.     At all relevant times, Mr. Salazar was typically paid an overtime rate of $26.00 per hour.

50.     In the three years preceding the filing of this Complaint, Mr. Salazar worked approximately 1,000 hours of overtime for Defendants for which he was paid less than his regular hourly rate.

51.     For the three years preceding the filing of this Complaint, Defendants owe Mr. Salazar approximately $24,000.00 in unpaid overtime wages.

**Facts Specific to Tamunotonye Brown**

52.     Defendants employed Plaintiff Tamunotonye Brown from approximately September 18, 2013 until approximately October 24, 2015.

53.     At all relevant times, Mr. Brown was paid a regular hourly rate of $12.00.

54.     In the three years preceding the filing of this Complaint, Mr. Brown worked approximately 1,000 hours of overtime for Defendants for which he was paid his regular hourly rate.

55.     Defendants owe Mr. Brown approximately $6,000.00 in unpaid overtime wages.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

56.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

57.     Plaintiffs were "employees" of Defendants within the meaning the FLSA, 29 U.S.C. § 203(e)(1).

58.     Plaintiffs were "non-exempt" employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 213.

59.     Each Defendant was an "employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

60.     The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. § 207(a)(1).

61.     Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

62.     Defendants' FLSA violations were willful.

63.     For their FLSA violations, Defendants are liable to Plaintiffs for unpaid overtime compensation, an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE WHL

64.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

65.     Each Defendant was an "employer" of Plaintiffs within the meaning of the WHL, Md. Code, Lab. & Empl. Art. § 3-401(b).

66.     The WHL requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. Md. Code, Lab. & Empl. Art. § 3-415.

67.     Defendants violated the WHL by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

68.     Defendants' WHL violations were willful.

69.     For their WHL violations, Defendants are liable to Plaintiffs for unpaid overtime compensation, an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT III

### FAILURE TO PAY WAGES UNDER THE WPCL

70.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

71.     Each Defendant was an "employer" of Plaintiffs within the meaning of the WPCL, Md. Code, Lab. & Empl. Art., § 3-501(b).

72.     The WPCL requires employers to promptly pay employees their wages "all compensation that is due to an employee for employment." Md. Code, Lab. & Empl. Art., § 3-501(c)(1).

73.     The "compensation" required to be paid by the WPCL includes overtime wages. *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 654 (Md. 2014).

10

74.     Defendants violated the WPCL by knowingly failing to promptly pay Plaintiffs at least one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

75.     Defendants' WPCL violations were willful.

76.     For their WPCL violations, Defendants are liable to Plaintiffs for three times the amount of the unpaid overtime wages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against the Defendants, jointly and severally, on all counts, in the total current amount of **$135,920.00**, and grant the following relief:

a.     Award Plaintiffs **$121,620.00** in unpaid wages and damages, consisting of the following overlapping elements:

    i.     unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

    ii.    unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the WHL, Md. Code, Lab. & Empl. Art., § 3-427;

    iii.   three times the amount of the unpaid overtime wages, pursuant to the WPCL, Md. Code, Lab. & Empl. Art., 3-507.2;

b.     Award Plaintiffs pre-judgment and post-judgment interest as permitted by law.

c.     Award Plaintiffs reasonable attorney's fees and expenses incurred in the prosecution of this action, (as of this date, approximately **$13,900.00**)

     d.      Award Plaintiffs court costs, (as of this date, **$400.00**)

     e.      Award any additional relief the Court deems just.


Date: July 26, 2016          Respectfully submitted,

                    /s/ Justin Zelikovitz, Esq.
                    Justin Zelikovitz, #986001
                    LAW OFFICE OF JUSTIN ZELIKOVITZ, PLLC
                    519 H Street NW
                    Washington, DC 20001
                    Phone: (202) 803-6083
                    Fax: (202) 683-6102
                    justin@dcwagelaw.com

                    *Counsel for Plaintiffs*